IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

R.E. PHELON COMPANY, INC.,    )
                              )     Civil Action No. 1:04-1124-MBS
        Plaintiff,        )
                              )
    vs.                       )         AMENDED
                              )    ORDER AND OPINION
CLARION SINTERED METALS, INC.,  )
                              )
        Defendant.      )
_____)

       Plaintiff R.E. Phelon ("Phelon") brings this action against Defendant Clarion Sintered Metals ("Clarion") seeking interpretation of its liability under a series of agreements between both parties. This case is before the court on Clarion's motion for partial summary judgment filed on September 29, 2005. Phelon filed a response on October 24, 2005, to which Clarion filed a reply on October 31, 2005. Also before the court is Phelon's motion for summary judgment filed on September 29, 2005. Clarion filed a response on October 24, 2005, to which Phelon filed a reply on November 03, 2005. The court held a hearing on the motions on May 1, 2006. The court has considered the motions, memoranda, exhibits, affidavits, and applicable case law. For the reasons set forth below, the court grants Clarion's motion for partial summary judgment. The court also grants, in part, and denies in part, Phelon's motion for summary judgment.

## I. FACTS

       Phelon manufactures ignition systems for the lawn and garden industry. Clarion's Motion for Partial Summary Judgment, 1. Clarion makes powdered metal products for companies that manufacture automotive and industrial products. Phelon's Motion for Summary Judgment, 2.

Phelon has purchased Clarion products for several years. Id. This case centers on the interpretation of three pieces of correspondence between both parties detailing the sale of two products, inertia rings and counterweights, from Clarion to Phelon.

On December 22, 2000, a Phelon representative sent a representative of Clarion a letter detailing an arrangement to buy inertia rings and counterweights from Clarion for use in Phelon's ignition systems. Plaintiff's Motion for Summary Judgment, 2. Clarion contends this letter is a contract requiring Phelon to purchase from Clarion eighty to ninety percent (80% to 90%) of its inertia ring requirements through June 30, 2004. Clarion's Motion for Partial Summary Judgment, 9. Clarion also contends that the letter bound Phelon to purchase forty percent (40%) of its required counterweights through the end of fiscal year 2000 and eighty to ninety percent (80% to 90%) thereafter until June 30, 2004. Id.

At some point, Phelon began receiving pressure from a purchaser of its assembled ignition systems to lower its prices. Clarion's Motion for Partial Summary Judgment, Ex. H, 4. To that end, Phelon sought lower prices for the components of the ignition systems from suppliers including Clarion. Id. at 6-7. Negotiations to lower the price of components ensued between Phelon and Clarion. Id. On July 16, 2003, a letter was exchanged between representatives of both parties proposing a price discount for the inertia ring if Phelon would purchase one hundred percent of its requirements for the part from Clarion. Phelon's Motion for Summary Judgment, 2. Clarion contends that this letter represents a contract binding Phelon to purchase inertia rings at the price and quantity requirements detailed therein. Clarion's Motion for Partial Summary Judgment, 9.

Clarion also alleges that a new deal for the counterweight was brokered on July 16, 2003 during a conversation between representatives of both parties. Clarion's Response to Phelon's

2

Motion for Summary Judgment, 12. Clarion argues that it orally contracted with Phelon to produce one hundred percent of Phelon's required counterweight business as additional compensation for the renegotiated inertia ring price. Id. This alleged contract is not included in the July 16, 2003 letter but was memorialized in a facsimile correspondence sent from Clarion to Phelon on the same date. Id. at 14.

On February 2, 2004, Clarion received another letter via facsimile from a Phelon representative. In this letter, Phelon stated that it intended to honor the terms of the December 22, 2000 letter but believed the July 16, 2003 to be "merely an agreement that if certain quantity volumes are met then pricing will be adjusted accordingly . . . ." Phelon's Motion for Summary Judgment, Ex. D, 1-2. Accordingly, Phelon stated that the July 16, 2003 letter was not a contract and that Phelon was not bound by the letter's terms. On February 23, 2004, Clarion sent a letter to Phelon indicating that Clarion considered both the December 22, 2000 letter and the July 16, 2003 letter to be contracts requiring purchases of inertia rings and counterweights through 2006 at the required volumes outlined in each piece of correspondence. Id. at Ex. E., 1-2.

On March 9, 2004, Phelon filed this action in state court for declaratory judgment asking the court to ascertain the respective obligations of the parties under the agreements outlined above. Complaint, 3. On April 9, 2004, Clarion removed the case to federal court and answered the complaint. Clarion responded to the complaint by arguing that the December 22, 2000 and July 16, 2003 letters were contracts obligating Phelon to purchase inertia rings and counterweights from Clarion. Answer, 2-3. Clarion also alleged seven counterclaims.

First, Clarion alleged that Phelon breached the December 22, 2000 contract by purchasing less than eighty percent of its requirements for the counterweight during the period beginning at the

3

start of the 2001-02 fiscal year and ending June 30, 2004.  Answer, 3.

Second, Clarion counterclaimed that Phelon breached the July 16, 2003 inertia ring contract by purchasing less than one hundred percent of its requirements for the inertia ring during the contract period.  Id. at 4.

Third, Clarion counterclaimed that Phelon breached a July 16, 2003 counterweight contract. Clarion argues that this contract obligated Phelon to purchase one hundred percent of its required counterweights from August 1, 2003 through July 31, 2006.  Id. at 6.  Clarion claims that Phelon breached this contract by purchasing less than one hundred percent of its required counterweights from Phelon during this period.  Id.

Fourth, Clarion claims that Phelon made a promise in the December 22, 2000 document to purchase certain quantities of inertia rings.  Id. at 7.  Clarion alleges that it relied on that promise and incurred costs stemming from that reliance.  Clarion seeks to have that promise enforced by invoking promissory estoppel.  Id.

In its fifth, sixth, and seventh counterclaims, Clarion argues promissory estoppel with regard to the counterweight agreement in the December 22, 2000 letter, the inertia ring agreement in the July 16, 2003 fax, and the counterweight agreement in the July 16, 2003 letter.  Id. at 8-10.

Clarion has moved for partial summary judgment as to its first and second counterclaims. Phelon has moved for summary judgment on all of its claims as well as Clarion's counterclaims.

## II.  LAW/DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be

rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must determine "whether the evidence . . . is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. McKinney v. Bd. of Trustees of Mayland Community College, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

The party moving for summary judgment has the burden of demonstrating that there is an absence of sufficient evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The nonmoving party must establish that there is a genuine factual dispute about a material fact. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248; Celotex Corp., 477 U.S. at 324.

An issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under the governing substantive law. Anderson, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323. Production of a mere scintilla of evidence in support of an essential element will not prevent the granting of a properly supported motion for summary judgment. Anderson, 477 U.S. at 251.

5

In <u>Rossignol v. Voorhaar</u>, the Fourth Circuit summarized the court's obligation when faced with cross motions for summary judgment:

> When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits "to determine whether either of the parties deserves judgment as a matter of law." <u>Philip Morris Inc. v. Harshbarger</u>, 122 F.3d 58, 62 n. 4 (1st Cir.1997) (citation and internal punctuation omitted). When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion. <u>Wightman v. Springfield Terminal Ry. Co.</u>, 100 F.3d 228, 230 (1st Cir.1996).

316 F.3d 516, 523 (4th Cir. 2003).  Accordingly, the court has reviewed each party's motion independently and resolved all factual disputes in the favor of the non-moving party.

A.  Clarion's Motion for Partial Summary Judgment

Clarion moves for partial summary judgment as to its first and second counterclaims.  In the first counterclaim, Clarion alleges that its correspondence with Phelon on December 22, 2000 formed a contract binding Phelon to purchase from Clarion specific requirements of counterweights and inertia rings from the start of the 2001-02 fiscal year to the end of June 30, 2004.  Clarion argues in its second counterclaim that the July 16, 2003 letter represents a contract binding Phelon to purchase inertia rings at price and quantities detailed therein.  Clarion avers that Phelon breached both contracts by purchasing less than the mandated percentages of Phelon's inertia ring and counterweight requirements.

The initial question is whether the December 22, 2000 and July 16, 2003 letters comprise enforceable contracts.  A contract is an obligation which arises from actual agreement of the parties manifested by words, oral or written, or by conduct.  <u>Regions Bank v. Schmauch</u>, 582 S.E.2d 432, 439 (S.C. Ct. App. 2003) (additional citations omitted).  The elements of a contract are offer,

acceptance, and valuable consideration.  Sauner v. Pub. Serv. Auth. of South Carolina, 581 S.E.2d 161, 166 (S.C. 2003). "In order for there to be a binding contract between parties, there must be a mutual manifestation of assent to the terms [of the contract]." Edens v. Laurel Hill, Inc., 247 S.E.2d 434, 436 (S.C. 1978).  In order for a contract to be valid and enforceable, the parties must have a meeting of the minds as to all essential and material terms of the agreement.  Davis v. Greenwood Sch. Dist. 50, 620 S.E.2d 65, 67 (S.C. 2005).  These essential terms include "price, time and place." Edens,  247 S.E.2d at 436.  "Where a contract does not fix price, there must be a definite method for ascertaining it."  Id.

If evidence before the court is conflicting or raises more than one reasonable inference as to the formation of a contract, the issue should be submitted to a jury.  Hendricks v. Clemson Univ., 578 S.E.2d 711, 716 (S.C. 2003).  However, "[when the] material facts concerning the formation of an alleged contract are not in dispute, the issue of contract *vel non* is a question of law." W.E. Gilbert & Assoc. v. South Carolina Nat'l Bank,  330 S.E.2d 307, 309 (S.C. Ct. App. 1985) (quoting Valjar, Inc. v. Maritime Terminals, Inc., 265 S.E.2d 734, 736 (Va. 1980)).  Further, "[a]n action to construe a written contract is an action at law." S. Atl. Fin. Servs., Inc. v. Middleton, 562 S.E.2d 482, 484 (S.C. Ct. App. 2002).  Whether a contract's language is ambiguous is a question of law.  South Carolina Dep't of Natural Res. v. Town of McClellanville, 550 S.E.2d 299, 302-03 (S.C. 2001). "[W]hen a contract is clear and unambiguous, the construction thereof is a question of law for the court." Bowen v. Bowen, 547 S.E.2d 877, 880 (S.C. Ct. App. 2001).

Under South Carolina law, the formation of a contract involving the sale of goods[1] is

_____

[1]

"'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be

governed by the Uniform Commercial Code ("U.C.C.").  <u>See</u> S.C. Code Ann. § 36-2-102 (2005).

Section 36-2-204 provides that:

> (1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

> (2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

> (3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

1.       December 22, 2000 Letter

The December 22, 2000 letter unambiguously memorializes an agreement between both parties to sell inertia rings (part number 26278) and counterweights (part number 1987300A).  The December 22, 2000 letter outlines products to be sold and the price to be paid for each.  The letter also enumerates specific time periods for the parties to engage in the transactions and identifies quantity amounts for the products to be sold.  Thus, the essential elements of "price, time, and place" are satisfied.

Although the specific quantities of both items are not specifically enumerated, there is recognition that Phelon will purchase a specific percentage of their requirements of each part from Clarion.  Under South Carolina law such a "requirements contract" is permissible and can constitute a binding, enforceable contractual agreement.  S.C. Code Ann. § 36-2-306(1) (2005) provides:

> A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no

_____

paid, investment securities (Title 36, Chapter 8) and things in action."  S.C. Code § 36-2-105(1) (2005).  It is undisputed that the instant parties were bargaining for the exchange of items that qualify as "goods" under the U.C.C.

quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

The court finds that no genuine issue of material exists as to whether the December 22, 2000 letter satisfies the requirements of the U.C.C. and is a contract under South Carolina law. Summary judgment on this claim in favor of Defendant is granted.

In so finding, the court notes the long history of both Clarion and Phelon calling the December 22, 2000 letter a contract. In the February 2, 2004 letter, Phelon states that "[it] acknowledges that based upon the December 22, 2000 letter, we committed to purchase 80-90% of our annual requirement of [part 26278–the inertia ring] from [Clarion] through June 20, 2004." Clarion's Motion for Partial Summary Judgment, Ex. G, 1; Phelon's Motion for Partial Summary Judgment, Ex. D, 1. The letter continues by noting, "[h]owever, Phelon has not *contractually committed* to purchase any designated quantities of this part from CSM *after* June 30, 2004." Id. (emphasis added). The February 2, 2004 letter also notes that Phelon "committed to purchase 80% to 90% of [its] annual requirement for [item 19873-00-A, the counterweight,] from [Clarion] through June 30, 2004."[2] Id. Further, in a letter dated October 2, 2002, Clarion calls the December 22, 2000 letter a "contract" and discusses the efforts of both parties to lower the prices on the products detailed in this contract. Phelon's Motion for Summary Judgment, Ex. H. There is no indication that Phelon ever responded by stating that Clarion's identification of the December 22,

---

[2]

The February 2, 2004 letter also indicates that Phelon was aware that the letter defined the percentages of product to be purchased as percentages of its "annual requirement." This is contrary to Phelon's argument that the reference to percentages included in the December letter "beg[s] the question: percentage of what?" Response to Defendant's Motion for Partial Summary Judgment, 5.

2000 letter as a contract was erroneous.  Thus, Phelon has acknowledged that the December 22, 2000 letter contractually obligated it to certain purchase requirements of inertia rings and counterweights until June 30, 2004.

2.    July 16, 2003 Letter

The July 16, 2003 letter was signed by representatives of both parties.  Phelon's Motion for Summary Judgment, Ex. C, 2.  The July 16, 2003 letter states that "[e]ffective with all shipments beginning August 1, 2003 . . . ," the price of the inertia ring would be lowered to $1.55.  Id.  Soon after the signing of the July 16, 2003 letter, Phelon purchased inertia rings at the newly discounted price of $1.55 per unit.  Deposition of Brent Hurst, Ex. J to Clarion's Motion for Partial Summary Judgment, 9.  According to the July 16, 2003 letter, this price was to remain in effect until August 1, 2004, whereupon the price would be reduced again to $1.52 "provided Phelon's anticipated volume for that fiscal year was at least 90% of an 800,000 part forecast."  Clarion's Motion for Partial Summary Judgment, 4.  The new pricing scheme was based upon Clarion supplying 100% of Phelon's annual requirements for the inertia ring.  Phelon's Motion for Summary Judgment, Ex. C, 1.

As with the December 22, 2000 letter, the July 16, 2003 letter outlines a specific product to be sold to Phelon and the price Phelon was to pay for it.  The July 16, 2003 letter enumerates specific time periods for the parties to engage in the transactions and identifies quantities of products to be sold.  Though the quantities are listed as percentages of requirements, such "requirements contracts," as noted previously, are permissible under the governing law.  See S.C. Code Ann. § 36-2-306-1 (2005).  Thus, the court finds that there exists no question of material fact concerning

whether the July 16, 2003 letter formed an enforceable contract between the parties. Summary judgment on this claim in favor of Defendant is granted.

Phelon argues that the July 16, 2003 letter cannot be a contract because it "lacks mutuality of obligation." Phelon's Response to Clarion's Motion for Partial Summary Judgment, 6. Phelon claims that Clarion "retained the right to alter the pricing in the 2003 letter even if [Phelon] complied with the alleged requirement to purchase 100% of its inertia rings from [Clarion]." Id. at 7. In support, Phelon quotes the deposition testimony of Clarion official Michael Nedzinski who stated that Clarion "would insist on varying the price of inertia rings" if Phelon did not purchase inertia rings in a number sufficient to Clarion. Phelon's Motion for Summary Judgment, 8.

The U.C.C. permits the recision or modification of a requirements contract if buyer demands are unreasonably disproportionate to a stated estimate. See S.C. Code § 36-2-306 (2005). Thus, the testimony of Mr. Nedzinski merely interprets the legal right of both parties to rescind or modify the contract if Phelon required amounts far in excess of, or under, the understood volume amounts forecasted in the July 16, 2003 letter. Even assuming Mr. Nedzinski's understanding of the parties obligations is inconsistent with the U.C.C., the contract does not fail for lack of mutuality. The July 16, 2003 letter bound both parties to the terms contained therein. Phelon retained the right to sue for any breach of the contract by Clarion. If Phelon believed the words or actions of Clarion constituted a breach of the July 16, 2003 contract, Phelon could pursue an action to enforce its rights under the contract. Phelon's argument is without merit.

Phelon also alleges that the July 16, 2003 letter is not a contract because Clarion failed to honor the price terms outlined in the July 16, 2003 contract by charging $1.55 per inertia ring for fiscal year 2004-05 instead of $1.52 per inertia ring. Phelon's Motion for Summary Judgment, 9.

According to Phelon, this action purportedly indicates that there is no mutuality of obligation between the parties because Clarion was not bound by the terms of the letter. Id. at 10. The court disagrees.

The July 16, 2003 letter allows for a $1.52 per ring price if Phelon projected the purchase of over 720,000 inertia rings. See Phelon's Motion for Summary Judgment, Exhibit C, 1. According to the contract, if Phelon determined that its annual volume requirement would fall below this amount, the price would remain at $1.55 per inertia ring. Id. Phelon's continued purchase of inertia rings at a price of $1.55 per ring does not indicate that the contract fails for lack of mutuality. Rather, this practice simply evidences that Phelon did not meet the 720,000 ring requirement necessary for the lower price. Phelon's arguments are without merit.

The court next turns to the question of whether Phelon breached the December 22, 2000 and July 16, 2003 contracts. Clarion contends that Phelon breached both contracts by failing to purchase the agreed-upon amounts of inertia rings and counterweights during the dates outlined in both contracts.

A breach of contract is defined as a failure without legal excuse to perform any promise which forms the whole or part of a contract. Tomlinson v. Mixon, 626 S.E.2d 43, 49 (S.C. App. 2006). To recover for a breach of contract, the party arguing that a breach has occurred must prove: (1) a binding contract entered into by the parties; (2) a breach or unjustifiable failure to perform the contract; and (3) damage suffered by the complaining party as a direct and proximate result of the breach. Id. (citing Fuller v. Eastern Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962)). A party's failure to comply with the contractual duty constitutes a breach. Id. "The general rule is that for a breach of contract the [breaching party] is liable for whatever damages follow as a natural

consequence and a proximate result of such breach." <u>Id.</u>

3.     Breach of the December 22, 2000 Contract

Clarion first argues that the December 22, 2000 contract obligated Phelon to purchase eighty percent of its annual requirements for the inertia ring through June 30, 2004.  As noted, the July 16, 2003 letter replaced the December 22, 2000 contract "[e]ffective with all shipments beginning August 1, 2003 . . . ." Defendant's Motion for Partial Summary Judgment, Ex. L, 1.  Thus, Clarion essentially argues that Phelon failed to honor the contract in effect from December 22, 2000 until August 1, 2003.  The court agrees.

Phelon admits that it failed to purchase the required percentages of inertia rings and counterweights mandated by the December 22, 2000 contract.  <u>See</u> Clarion's Motion for Partial Summary Judgment, Exhibit N, 5.  Phelon purchased only forty-four percent of its requirements for inertia rings during fiscal year 2002-03.[3]  <u>Id.</u>  Phelon purchased only eighty-two percent of its inertia ring requirements during fiscal years 2003-04 and 2004-05.   <u>Id.</u>  Phelon purchased only fifty-nine percent of its counterweight requirements during fiscal year 2001-02.   <u>Id.</u>  Phelon also purchased only forty-five percent of its counterweight requirements for fiscal year 2002-03 and seventy-six percent of its counterweight requirements for 2003-04.  <u>Id.</u>  These amounts failed to satisfy the terms

---

[3]

The chart included in Clarion's motion is identical to a chart provided by Phelon in response to Clarion's interrogatories.  <u>See</u> Clarion's Motion for Partial Summary Judgment, Ex. N, 6.  Clarion initially argued in its motion that Phelon purchased forty-four percent of its inertia ring requirements during fiscal year 2001-02.  Clarion's Motion for Partial Summary Judgment, 10.  This argument appears to be in error as both charts indicate that Phelon purchased ninety-seven percent of its requirements from Clarion for the inertia ring during the 2001-02 fiscal year. At the hearing on May 1, 2006, counsel for Clarion corrected the argument to state that the charts indicated a purchase of forty-four percent of Phelon's inertia ring requirements during fiscal year 2002-03.

of the December 22, 2000 contract. Thus, based on the admissions of Phelon, the court finds that no question of material facts exists concerning whether Phelon breached the December 22, 2000 contract.

Phelon argues that it is excused from any nonperformance under the December 22, 2000 letter because "Clarion admittedly rejected Phelon's offer to perform under the alleged terms of the 2000 letter." Phelon's Motion for Summary Judgment, 4. Phelon states, "the undisputed evidence demonstrates that [Phelon] expressed its willingness to purchase the parts in compliance with the terms of the 2000 letter." Id. at 5. Phelon appears to argue that it expressed a desire to comply with the terms of the December 22, 2000 contract in February 2004. Id. Phelon avers that because Clarion allegedly stated that such compliance was "unacceptable," Phelon is excused from any breach of December 22, 2000 contract. Id.

However, when Phelon agreed to be bound by the December 22, 2000 contract in February 2004, the contract had been superseded by the July 16, 2003 contract. Moreover, the breaches of the December 22, 2000 contract alleged by Clarion occurred well before February 2004, when Phelon purportedly agreed to be bound by the terms of the December 22, 2000 letter.[4] The court finds that any alleged non-compliance by Clarion fails to excuse Phelon's non-performance. Further, if Clarion's February 23, 2004 letter is interpreted as a breach of the December 22, 2000 contract, this

---

[4]

The court notes that there also exists a dispute over whether Clarion actually refused to honor the December 22, 2000 agreement. Clarion provides evidence that it honored all orders placed by Plaintiff and continued to deliver the products to Phelon. Clarion's Response to Plaintiff's Motion for Summary Judgment, 5. Clarion argues that as of February of 2004, it was selling Phelon inertia rings under a "blanket" purchase order. Id. Clarion also argues that Phelon's own shipping records indicate that Clarion did ship the inertia ring and counterweights from February 2004 through the end of Phelon's 2003-04 fiscal year. See Clarion's Response to Plaintiff's Motion for Summary Judgment, Ex. E, 1.

14

would excuse performance only from the date of the response to the end of the time period outlined in the contract (June 30, 2004). Thus, Phelon's failure to purchase the required percentages of inertia rings and counterweights from the effective date of the December 22, 2000 contract until February 23, 2004 would not be excused, even assuming Clarion refused to perform.

Phelon also avers that summary judgment is inappropriate as to the December 22, 2000 contract claims because questions of material fact remain regarding alleged non-conforming goods furnished by Clarion to Phelon. Phelon's Response to Clarion's Motion for Partial Summary Judgment, 3. In support, Phelon argues that "Barry Killough, [Phelon's] former purchasing manager who sent the 2000 letter, testified [that] he was forced to seek the assistance of other vendors because [Clarion's] inertia rings routinely caused balance problems on [Phelon's] completed products." Id. Phelon contends that the tendering of non-conforming goods excuses any alleged breach by Clarion. The court disagrees.

An "installment contract" is a contract which requires or authorizes the delivery of goods in separate lots to be separately accepted. S.C. Code Ann. § 36-2-612 (2005). The designation of an installment contract need not be explicit for the agreement to be enforceable. The U.C.C. definition of an installment contract includes contracts where installment deliveries are "tacitly authorized by the circumstances or by the option of either party." Comment 1 to S.C. Code § Ann. 36-2-612 (2005). The contracts at issue here are essentially installment contracts because Clarion would supply monthly shipments of counterweights or inertia rings depending on Phelon's monthly requirements. See Clarion's Motion for Partial Summary Judgment, Ex. 6.

Under the U.C.C., "a buyer may reject any installment which is nonconforming if the nonconformity substantially impairs the value of that installment and cannot be cured . . . ." S.C.

Code Ann. § 36-2-612 (2005). However, unless the alleged breach "substantially impair[s] the value of the whole contract," the buyer must accept that installment if the seller gives adequate assurance of its cure. Id. Killough's deposition testimony indicates that any alleged non-conforming products resulted merely in Phelon's temporary halting of shipments from Clarion. Deposition of Barry Killough, Ex. A to Reply to Phelon's Response to Clarion's Motion for Partial Summary Judgment, 5. According to Killough, despite the alleged non-conforming products, Phelon "never intend[ed] to take [the inertia ring] business away from Clarion." Id. Indeed, it is undisputed that Phelon continued to purchase inertia rings from Clarion following the alleged delivery of non-conforming products. Further, following the alleged tendering of non-conforming goods, Phelon entered into the July 16, 2003 contract with Clarion for the purchase of inertia rings through 2006. Accordingly, any alleged non-conforming shipments that may have justified Phelon's breach were cured through Clarion's subsequent delivery, and Phelon's acceptance, of goods.

While the delivery of allegedly non-conforming goods by Clarion fails to generate a question of material fact as to the existence of a contract between the parties or whether Phelon breached that contract, it details a dispute as to the extent of the damages incurred by Clarion as a result of Phelon's breach. Accordingly, the court finds that a question of material fact exists as to the extent of Clarion's damages and orders that this question be presented to a jury.

4.      Breach of July 16, 2003 Contract

Phelon admits to purchasing less than the required one hundred percent of the inertia ring during the 2003-04 and 2004-05 fiscal years. See Clarion's Motion for Summary Judgment, Ex. N, 6. However, Phelon avers that summary judgment is inappropriate as to the July 16, 2003 contract

16

claims because questions of material fact remain regarding alleged non-conforming goods furnished by Clarion to Phelon. Phelon's Response to Clarion's Motion for Partial Summary Judgment, 8-9. Specifically, Phelon alleges that Clarion breached the July 16, 2003 contract (or that Phelon's alleged breach was excused) by Clarion's sending of non-confirming products "in late 2004 or early 2005." Id. Phelon points to the affidavit of Clarion official Michael Nedzinski in support of its argument that any alleged breach by Phelon is excused by Clarion's tender of non-conforming products. Phelon's Response to Clarion's Motion for Partial Summary Judgment, 9. The cited deposition testimony indicates that Clarion may have supplied approximately 13,000 inertia rings that failed to comply to Phelon's specifications. Deposition of Nedzinski, Ex. A to Phelon's Response to Clarion's Motion for Partial Summary Judgment, 12. The record also includes a letter from Phelon's representative C. Brent Hurst alleging that Clarion provided defective inertia rings. See Phelon's Response to Clarion's Motion for Partial Summary Judgment, Ex. B, 6.

Even assuming that Clarion tendered non-conforming products, Phelon provides no support for the contention that the alleged breach impaired the value of the entire contract. Similar to the December 22, 2000 contract, the July 16, 2003 contract is an "installment contract" under the U.C.C. See S.C. Code Ann. § 36-2-612 (2005). Nedzinski's testimony indicates that any potential delivery of non-conforming products resulted in Phelon's receipt of "some kind of credit" from Clarion. Phelon's Response to Clarion's Motion for Partial Summary Judgment, Ex. A 12. The failure to provide goods was cured by the issuance of credit.

As with the December 22, 2000 contract, the alleged tendering of non-conforming goods does leave undetermined the total value of the damages incurred by Clarion. Further, the extent to which Phelon continued to purchase inertia rings from Clarion following notification of Phelon's

intention to breach the July 16, 2003 contract remains disputed.[5] The question of Clarion's damages suffered as a result of Phelon's breach of the July 16, 2003 inertia ring contract is a question for a jury.

B.    Phelon's Motion for Summary Judgment

Phelon has moved for summary judgment as to all of Clarion's counterclaims. The court has already ruled that the December 22, 2000 and July 16, 2003 letters constitute enforceable contracts. This ruling was made construing the evidence in the light most favorable to Phelon. Accordingly, the court denies Phelon's motion as to Clarion's first and second counterclaims.

As to Clarion's third counterclaim, Clarion avers that a separate letter was faxed on July 16, 2003 from Phelon's representative, Mike Nedzinski, to Clarion's representative, C. Brent Hurst. See Phelon's Motion for Summary Judgment, Ex. G, 1. This fax (hereinafter the "July 16, 2003 fax") mandated that the counterweights be sold at eleven cents per unit and detailed a purported agreement between the parties to supply counterweights and "pole pieces" (another part manufactured by Clarion) through the same dates as the July 16, 2003 letter. Id.

Assuming for the purposes of summary judgment that the July 16, 2003 fax represents a contract between the parties, the court finds that it fails to satisfy the statute of frauds. S.C. Code Ann. § 36-2-201 (2005) states:

---

[5]

The record reflects that Plaintiff and Defendant continued to engage in the purchase and sale of inertia rings after the notification of Plaintiff's intention to breach the July 16, 2003 contract and after the filing of the underlying lawsuit. See Plaintiff's Response to Defendant's Motion for Partial Summary Judgment, Ex. B, 6. Thus, the parties continued business relationship calls into question the extent to which Defendant suffered damage as a result of Plaintiff's breach.

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. . . .

It is undisputed that the alleged contract memorializes an agreement for the sale of goods in excess of $500. However, the alleged writing indicating that a contract was entered into by the parties is not signed by Phelon, the party against whom enforcement is sought.

Clarion argues that though the fax is not signed by Phelon, it is nonetheless enforceable because it satisfies the "merchant's exception" to the statute of frauds. See S.C. Code Ann. § 36-2-201(2) (2005). Section 2-201(2) states:

Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

"In order to be a 'confirmation' under section 36-2-201(2), a writing must at least 'indicate that a binding or completed transaction has been made.'" Kline Iron and Steel Co., Inc. v. Gray Communications Consultants, Inc., 715 F. Supp. 135, 142 (D.S.C. 1989). "By requiring the buyer to take further action in order to signal acceptance . . . , [the seller] indicate[s] to the buyer . . . that the terms quoted were still subject to acceptance or rejection rather than representing a memorialization of an oral contract[;] . . . . [a] true confirmation requires no response." Id. (quoting The Great Western Sugar Co. v. Lone Star Donut Co., 567 F. Supp. 340, 342 (N.D. Tex. 1983)).

Here, the July 16, 2003 fax specifically asks Phelon's representative C. Brent Hurst to confirm the order for counterweights and pole pieces. Phelon's Motion for Summary Judgment, Ex. G., 1. ("Regarding the 19873-00-A counterweight . . . , please send me an email . . . confirming that [Clarion] will also be supplying these parts . . . ."). The alleged agreement calls for a response from

19

Clarion and therefore requires the buyer to take further action. The fax is not a "confirmation" as envisioned under the "merchant's exception" set forth in section 36-2-210(2).

Clarion also argues that Phelon is "estopped" from asserting the statute of frauds defense. Clarion's Response to Phelon's Motion for Summary Judgment, 11. The doctrine of estoppel may be invoked to prevent a party from asserting the statute of frauds. See Florence Printing Co. v. Parnell, 182 S.E. 313 (S.C. 1935). "In order to overcome the statutory requirement of a writing, however, the party asserting the estoppel must show that he has suffered a definite, substantial, detrimental change of position in reliance on the contract, and that no remedy except enforcement of the bargain is adequate to restore his former position." Atlantic Wholesale Co., Inc. v. Solondz, 320 S.E.2d 720, 723 (S.C. Ct. App. 1984). "It is not sufficient to show merely that he has lost an expected benefit under the contract." Id. After a thorough review of Clarion's argument, the court finds that Clarion has not alleged damages beyond the lost benefits of the alleged bargain between the parties. Estoppel is inapplicable and Phelon may assert the statute of frauds defense.

The court concludes that there is no dispute of material fact that the July 16, 2003 fax fails to satisfy the statute of frauds and is unenforceable. Summary judgment is granted to Phelon as to Clarion's third counterclaim.

Clarion's remaining counterclaims are based on the theory of promissory estoppel. Promissory estoppel requires a claimant to prove: (1) the presence of an unambiguous promise; (2) the promisee reasonably relied upon the promise; (3) the reliance was expected and foreseeable by promisor; and (4) the promisee was injured as a result of reliance upon the promise. Davis v. Greenwood Sch. Dist. 50, 620 S.E.2d 65, 67 (S.C. 2005) (citing Satcher v. Satcher, 570 S.E.2d 535, 538 (S.C. Ct. App. 2002)). "The applicability of the doctrine depends on whether the refusal to

20

apply it 'would be virtually to sanction the perpetration of a fraud or would result in other injustice.'" Satcher, 570 S.E.2d at 538-39 (quoting Citizens Bank v. Gregory's Warehouse, Inc., 375 S.E.2d 316, 318 (S.C. Ct. App.1988)).

"Promissory estoppel comes into play in situations where actual consideration is not present." Glover v. Lockheed Corp., 772 F. Supp. 898, 907 (D.S.C. 1991). Promissory estoppel is therefore inapplicable in situations where a contract exists. In light of the court's finding that the December 22, 2000 and July 16, 2003 letters formed enforceable contracts, relief under a promissory estoppel claim is unwarranted. Clarion's fourth, fifth, and sixth counterclaims are dismissed. Phelon's motion for summary judgment as to these claims is therefore moot.

Clarion's seventh counterclaim alleges that the July 16, 2003 fax should be enforced by the court based on a theory of promissory estoppel. However, Clarion has failed to provide the court with more than a mere scintilla of evidence establishing that it relied on Phelon's promise with regard to the counterweights. Clarion also fails to provide more than a mere scintilla of evidence indicating that such reliance, if present, was reasonable. Further, the court has reviewed the evidence presented in the light most favorable to Clarion and finds that the instant facts do not present a scenario in which the perpetration of fraud would be sanctioned if the court failed to apply the doctrine of promissory estoppel. Accordingly, summary judgment is granted to Phelon as to Clarion's seventh counterclaim.

### III. CONCLUSION

For the reasons articulated hereinabove, the court GRANTS Clarion's motion for partial summary judgment as to its first and second counterclaims. The court DENIES Phelon's motion for

summary judgment as to these counterclaims.  The court GRANTS Phelon's motion for summary judgment as to Clarion's third and seventh counterclaims and finds MOOT Phelon's motion for summary judgment as to Clarion's fourth, fifth, and sixth counterclaims.

The case is scheduled to be called during the September term of court to determine Defendant's damages.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
United States District Judge

September 5, 2006

Columbia, South Carolina

Nunc pro tunc date:  July 28, 2006